FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DIANE MICHELE R.,

    Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

No.  2:19-CV-00235-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

    Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 14, 15**. Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision, which denied her applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 7-12, 18-39. After reviewing the administrative record and briefs filed by the parties, the Court

**GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed her applications for disability insurance benefits and supplemental security income on August 12, 2016. *See* AR 21, 234-243, 244-45. In both applications, she alleged disability beginning on October 5, 2012.[1] AR 235, 244. Plaintiff's applications were initially denied on November 17, 2016, *see* AR 157-160, and on reconsideration on June 8, 2017. *See* AR 166-171. Plaintiff then filed a request for a hearing. AR 173-74.

A hearing with an Administrative Law Judge ("ALJ") occurred on March 20, 2018. AR 41-84. On May 1, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits or supplemental security income. AR 18-39. On January 25, 2019, the Appeals Council denied Plaintiff's request for review, AR 7-12, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. After the Commissioner granted Plaintiff's request for more time to file a civil action, AR 1-2, Plaintiff timely filed the present action on July 9, 2019 challenging the denial of benefits. ECF No. 1. Accordingly, her claims are

---

[1] However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335.

properly before this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If it does, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). It is the ALJ's responsibility to "resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 45 years old on the alleged date of onset, which the regulations define as a younger person. AR 85; *see* 20 C.F.R. §§ 404.1563(c), 416.963(c). She graduated from high school, completed an Associate of Arts degree, and can read, write, and communicate in English. AR 79, 279, 281.

She has past work as a family activities coordinator, perfume salesperson, bookstore customer service representative, childcare aide, apprentice funeral director, and grocery store cashier. AR 260-66.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from October 5, 2012 (the alleged onset date) through May 1, 2018 (the date the ALJ issued his decision). AR 22, 33.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 23.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: obesity, central core disease, migraines, lumbar degenerative disc disease, asthma, seizure disorder, major depressive disorder, generalized anxiety disorder, somatic symptom disorder, and posttraumatic stress disorder. AR 23.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 25-26.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), albeit with some additional limitations. AR 26. With respect to Plaintiff's physical abilities, the ALJ found that she could occasionally balance,

stoop, kneel, crouch, crawl, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. AR 26. She could not have concentrated exposure to vibration, extreme cold, or pulmonary irritants, and could not have any exposure to hazards such as unprotected heights or moving mechanical parts. AR 26. With respect to Plaintiff's mental abilities, the ALJ found that she was limited to simple, routine, repetitive tasks with a reasoning level of two or less, and that she could not have contact with the public. AR 26. Given these physical and psychological limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 31.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. AR 32. These included the jobs of housekeeper/cleaner, food sorter, and small parts assembler. AR 32.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) improperly discredited her subjective pain complaint testimony, (2) improperly found that she did not meet the criteria for Listing 12.04, and (3) failed to incorporate the sedentary work restriction assessed by medical expert Lynne Jahnke, M.D. ECF No. 14 at 3-12.

**A.     The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 14 at 3-9.

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the symptoms alleged—as is the case here—and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were belied by: (1) the longitudinal medical evidence, including her examination findings and reports to medical providers, (2) evidence that her conditions improved with treatment, (3) her daily activities, (4) inconsistencies in her reports, and (5) the fact that she stopped working for reasons other than her impairments. *See* AR 27-29. These are generally appropriate bases for questioning the credibility of subjective complaints. 20 C.F.R. §§ 404.1529(c)(2)-(4), 416.929(c)(2)-(4); *Molina*, 674 F.3d at 1112-13; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

### 1. Inconsistent with the medical evidence

The ALJ first discounted Plaintiff's testimony on the basis that her examination findings and reports to medical providers were inconsistent with her alleged level of limitation. AR 27-28.

The ALJ noted that Plaintiff consistently had full strength in her upper and lower extremities and had normal muscle tone and bulk. AR 27; *see* AR 474, 484-85, 495, 500, 504, 509-10, 513, 519, 551-52, 576, 688, 1143, 1153, 1158. She consistently had a normal gait. AR 392, 397, 401, 495, 500, 510, 513, 520, 577, 1143, 1153, 1158. She also consistently had normal mental status examinations throughout the period at issue. AR 28; *see* AR 386, 393, 397, 401, 435, 495, 509, 519, 551, 576, 1152. Her depression and anxiety symptoms waxed and waned, but she found an effective medication and began "doing very well." AR 1163; *see* AR 429 ("denies depression or anxiety").

Plaintiff acknowledges these benign findings but argues that the ALJ failed to "state what symptom allegations were inconsistent" with them. ECF No. 14 at 5. These findings were inconsistent with Plaintiff's reports and testimony that she could not "get[] out of [her] house most days" due to her psychological symptoms, feel her left leg, stand for longer than three minutes while waiting on the microwave, or carry more than a gallon of milk. AR 77-78, 268, 273.

1    In addition, the ALJ also found that the longitudinal medical evidence

2  undermined Plaintiff's complaints of debilitating migraines—a condition she

3  raised for the first time at the hearing. AR 28-29, 67-73, 280. Plaintiff testified that

4  she has had migraines since high school, that she had them "to some degree at least

5  20 days out of the month," and that they were "really bad" two to three times per

6  week. AR 71. She testified that she was experiencing a migraine during the

7  hearing. AR 71.

8    The ALJ found that the medical record undermined Plaintiff's allegations

9  about both the frequency and severity of her migraines. AR 28. Regarding

10  frequency, the ALJ noted that Plaintiff "told her providers that she has no more

11  than 10 headache days a month when on treatment" and that she had "fairly bad

12  migraine[s] only three to four times a month." AR 28; *see* AR 512, 1149. The ALJ

13  further observed that at other times, "she has reported her migraines are resolved,

14  or at least much improved." AR 28; *see* AR 475, 488, 1145. In 2017, she was able

15  to discontinue her headache medication while initially being "headache free." AR

16  28. Regarding severity, the ALJ noted that Plaintiff had a migraine at the hearing

17  yet she "sat through the one-hour hearing in no apparent discomfort," did not need

18  sunglasses or a visor, and "was able to fully engage in the hearing." AR 28. The

19  ALJ also observed that her treatment regimen was "not suggestive of a particularly

20  severe migraine syndrome," given that she had not needed emergent treatment, had

1   not trialed many medications, and her doctors characterized her headaches as "not

2   intractable" (*i.e.*, they were easily managed or relieved). AR 29; *see* AR 513.

3          Plaintiff argues that her "number of migraines per week or month changed

4   over time" and that this was "more indicative of her medication regiment . . . than

5   proof she is not credible." ECF No. 14 at 6. Plaintiff's brief is devoid of any

6   citations to the medical record to support this contention, nor does she attempt to

7   address the ALJ's actual findings or the evidence the ALJ relied upon to support

8   those findings. *See id.* But in any event, Plaintiff's argument reinforces the ALJ's

9   point—that she was able to effectively control her migraine symptoms with proper

10  treatment. Plaintiff also argues that she was only able to function well and engage

11  during the hearing because she "had taken Verapamil the day of the hearing so her

12  migraines had improved." ECF No. 14 at 6. Again, this argument reinforces the

13  ALJ's point that treatment effectively managed her symptoms.

14         **2.     Improvement with treatment**

15         The ALJ also discounted Plaintiff's complaints based on evidence of

16  effective responses to treatment. AR 27-28.

17         With respect to Plaintiff's back condition, Plaintiff first complained of low

18  back pain with radiculopathy in March 2016. AR 684-89. She was diagnosed with

19  herniated discs at L3-4 and L4-5, which were causing stenosis and nerve root

20  compression. AR 674. She underwent surgery in May 2016. AR 694-97. At her

1  two-week follow up appointment, she "had great improvement in back pain" and

2  was "very pleased with [her] surgical result." AR 676. She had no radicular pain in

3  her legs, no paresthesia, no weakness, and she was "eager to increase her activity."

4  AR 676. At her three-month follow up, she was "doing very well," her back pain

5  had "significantly improved," and her provider indicated that "no further surgical

6  restrictions [were] needed." AR 678.

7          With respect to Plaintiff's ongoing migraines, the ALJ noted that Plaintiff's

8  neurologist put her on the maximum dose of Verapamil in October 2016. AR 28;

9  *see* AR 828. It worked well enough that Plaintiff tapered herself off the medication

10  from June 2017 to September 2017. AR 1156. "She was headache free, until the

11  weather changed." AR 1156. Her neurologist then restarted her on Verapamil at a

12  quarter dose. AR 1158. By her next appointment, her "headaches [had] resolved."

13  AR 1160. Throughout the period at issue, medical providers have documented that

14  this medication successfully controls Plaintiff's migraine symptoms. *See* AR 477

15  ("verapamil definitely helps control her migraines"), 490 ("Verapamil has been

16  very successful for her.").

17          With respect to Plaintiff's mental impairments, the ALJ noted that Plaintiff's

18  depression was "well controlled" on medication. AR 28; *see* AR 1160, 1163.

19          Plaintiff does not mention or challenge this rationale in her brief. *See* ECF

20  No. 14.

### 3.    Daily activities

The ALJ also discounted Plaintiff's symptom complaints on the basis that they were belied by her daily activities. AR 29. The ALJ noted that Plaintiff was able to care for her daughter (with the help of a caregiver three hours per day), cook, clean the house, sweep, mop, do laundry, go out alone, drive, shop, manage financial accounts, and had no problems with personal care. AR 29; *see* AR 269-272.  She did household chores for "1-2 hours a few times a week." AR 270. Her main hobby was going to yard sales and thrift stores. AR 272, 810. A few weeks after her back surgery she went to yard sales with a friend. AR 1102. The ALJ concluded that these "high functioning activities of daily living" were "inconsistent with her allegations of total disability." AR 29.

Plaintiff argues that her daughter's caregiver helped her five hours a day, not three, and that "the caregiver did '90% of the chores.'" ECF No. 14 at 7. In other words, Plaintiff appears to argue that she could not actually care for her daughter or perform any of her other daily activities without assistance. *See id.*

However, Plaintiff's daughter did not have a caregiver from 2012 to 2015 (*i.e.*, the first three years of the period at issue). AR 62. During this period, Plaintiff was solely responsible for her daughter's care. AR 62. When the caregiver first started in 2015, it was for three hours per day. AR 63. By the time of the hearing in 2018, it had increased to five hours per day. AR 62. Plaintiff also split custody of

her daughter with her former spouse. AR 62. The caregiver accompanied the daughter—Plaintiff had them both Wednesday through Friday, and her former spouse had them Saturday through Tuesday. AR 62. In sum, substantial evidence supports the ALJ's findings that Plaintiff was able to care for her daughter and also perform her own daily activities independently.

Plaintiff also argues that the cited activities were isolated and did not "constitute a 'substantial part' of her day." ECF No. 14 at 8. The portions of the record that Plaintiff cites for this argument do not support this conclusion. *See id.* (citing AR 96-97) ("Clmt able to understand, remember & carry out SRT & detailed tasks as seen by her ability to provide regular care for her ill daughter."). But regardless of the frequency of Plaintiff's activities, if those activities are inconsistent with the limitations she claims to have, this nevertheless has a bearing on her credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). And here, her activities were inconsistent with her claims that she could not "get[] out of [her] house most days," "pay attention whatsoever," stand for longer than three minutes while waiting on the microwave, or carry more than a gallon of milk. AR 78, 268, 273. Accordingly, the ALJ did not err in questioning her credibility on this basis. *See Garrison*, 759 F.3d at 1016.

1

### 4.    Inconsistencies in her reports

2      The ALJ also discounted Plaintiff's credibility due to various inconsistencies

3 in her reports. AR 29. First, the ALJ noted that during a July 2016 psychological

4 evaluation—which was "for the purpose of obtaining state disability benefits"—

5 Plaintiff reported having panic attacks "off and on for about three years." AR 29;

6 *see* AR 808. She described "getting tunnel vision and feeling like she need[ed] to

7 get out and run because she [was] not safe." AR 808. However, in

8 "contemporaneous statements to treating providers for the purpose of treatment,"

9 Plaintiff expressly denied experiencing panic attacks. AR 29; *see* AR 384 ("The

10 patient denies anxiety or panic attacks."), 411, 429, 442. She also never mentioned

11 panic attacks to her mental health counselor. *See* AR 876-959, 1206-1266. Given

12 Plaintiff's complaints of frequent panic attacks to the examining psychologist, the

13 ALJ "expect[ed] to see some reference" to them in the treatment notes. AR 29.

14      Next, the ALJ noted that Plaintiff initially reported that she had "no

15 limitations in any physical activities" and that only mental health issues prevented

16 her from working. AR 29; *see* AR 268, 280. However, Plaintiff then testified at the

17 hearing that her physical conditions and migraines caused severe limitations. AR

18 67-73, 77-79.

19

20

Finally, the ALJ noted that Plaintiff had told the examining psychologist that she could not work because of her daughter's health problems and because her "soon-to-be ex [was] a narcissistic abuser." AR 29, 808.

Plaintiff does not mention or challenge this rationale in her brief. *See* ECF No. 14.

### 5.    Stopped working for reasons other than impairments

Finally, the ALJ partially discredited Plaintiff's testimony on the basis that her ongoing unemployment was due to factors unrelated to her allegedly disabling impairments. AR 29.

Plaintiff worked full time at a bookstore from 2002 until 2011. AR 260, 263, 369. In 2011, the store closed and she was laid off. AR 810. In 2012, she worked two part time jobs: as a perfume salesperson for Bath & Body Works and also as a family activities coordinator for the YMCA, each for 16 hours per week. AR 260-62, 369. She stopped working at Bath & Body Works in May 2012 and she quit at the YMCA in December 2012 due to her daughter's health issues. AR 369, 810. The ALJ inferred from this work history that Plaintiff's "impairments [were] not the cause of her unemployment." AR 29.

Citing her hearing testimony, Plaintiff argues that her migraines were actually "[o]ne of the main reasons" why she left her job at the YMCA. ECF No. 14 at 8. However, she told the examining psychologist that she left because of her

daughter's health issues. AR 810. When the record contains conflicting evidence,

resolving these conflicts is the province of the ALJ, not the Court. *Matney*, 981

F.2d at 1019.

Plaintiff also argues that the bookstore laying her off is irrelevant because it

was prior to her alleged onset date, and "therefore should not have been used to

discredit [her]." ECF No. 14 at 9. Plaintiff cites no authority for this argument. But

even if there were a requirement that a claimant must become unemployed after the

alleged onset date for it to be relevant to his or her credibility, that is what

happened here—Plaintiff quit her job at the YMCA after the alleged onset date.

**B.    The ALJ Properly Found that Plaintiff did not Meet the Criteria for Listing 12.04 at Step Three**

Plaintiff argues that the ALJ erred at step three by finding that she did not

meet the criteria for Listing 12.04. ECF No. 14 at 9-11. Specifically, Plaintiff

argues that the ALJ based his determination on an evaluation from Kayleen Islam-

Zwart, Ph.D., but then subsequently discredited Dr. Islam-Zwart's opinion at step

four when assessing the residual functional capacity. *Id.* at 10. Plaintiff also argues

that the ALJ erred by not considering her mental health counselor's treatment notes

in the step three analysis. *Id.*

At step three in the sequential evaluation process, claimants can establish

*per se* disability if they prove that one of their impairments meets or medically

equals a listed impairment in 20 C.F.R. § 404 Subpt. P. App. 1. In order to meet

Listing 12.04 for depressive, bipolar, and related disorders, the claimant must

establish:

> Extreme limitation of one, or marked limitation of two, of the
> following areas of mental functioning:
> 1.    Understand, remember, or apply information;
> 2.    Interact with others;
> 3.    Concentrate, persist, or maintain pace;
> 4.    Adapt or manage oneself.

Listing 12.04(B).[2]

With respect to the first category—understanding, remembering, or

applying information—the ALJ found that Plaintiff only had mild

limitations. AR 25. In making this finding, the ALJ relied on five pieces of

evidence. First, the ALJ noted Dr. Islam-Zwart's finding that Plaintiff

"appeared to be of average intelligence." AR 25; *see* AR 810 ("There was

no real indication of cognitive difficulty. She seemed of probably average

intelligence."). Second, the ALJ noted that Plaintiff performed well during

Dr. Islam-Zwart's mental status examination, particularly on the short delay

memory tasks and command tasks, and obtained 28 out of a possible 30

---

[2] Paragraph "B" is the only paragraph at issue here. Claimants can meet the criteria for Listing 12.04 by satisfying either Paragraphs A and B, or Paragraphs A and C. The ALJ did not address Paragraph A at all in his decision. *See* AR 25-26. Without any findings or reasoning to review, the Court will view the record in the light most favorable to Plaintiff and assume that she satisfies the Paragraph A criteria. However, the ALJ found that Plaintiff did not meet the Paragraph C criteria, which Plaintiff does not contest in her brief. *See* AR 26; ECF No. 14 at 9-11. Accordingly, the sole issue here is whether the ALJ properly found that Plaintiff does not satisfy the Paragraph B criteria.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT** ~ 18

1    points. AR 25; *see* AR 810-11. Third, the ALJ noted that Plaintiff

2    graduated from high school, went to college, and earned an Associate of

3    Arts degree. AR 25. Fourth, the ALJ noted that Plaintiff was able to drive

4    a car. AR 25. Finally, the ALJ noted that Plaintiff reported being able to

5    follow both written and spoken instructions well. AR 25; *see* AR 273.

6         With respect to the second category—interacting with others—the ALJ

7    found that Plaintiff had moderate limitations. AR 25. The ALJ acknowledged Dr.

8    Islam-Zwart's finding that Plaintiff had poor eye contact. AR 25; *see* AR 810. The

9    ALJ also acknowledged Plaintiff's report that she had "no desire to be as social as

10   [she] used to be." AR 25; *see* AR 272. Despite those issues, however, the ALJ

11   observed that Plaintiff had people over to her house once a month. AR 25; *see*

12   AR 272. She reported having no problems getting along with family, friends,

13   neighbors, authority figures, or anyone else. AR 25; *see* AR 273-74. She liked

14   going to yard sales with friends. AR 1102.

15        With respect to the third category—concentrating, persisting, or

16   maintaining pace—the ALJ found that Plaintiff had moderate limitations. AR 25-

17   26. The ALJ acknowledged Plaintiff's reports that she could not pay attention or

18   finish what she started. AR 25; *see* AR 273. The ALJ also acknowledged

19   Plaintiff's inability to complete serial 7s during Dr. Islam-Zwart's examination.

20   AR 25; *see* AR 810. Despite those issues, however, the ALJ observed that

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT** ~ 19

1    Plaintiff was able to pay bills, count change, handle her bank accounts, use

2    money orders, and balance a checkbook. AR 25-26; *see* AR 271.

3        With respect to the fourth category—adapting or managing oneself—the

4    ALJ found that Plaintiff had mild limitations. AR 26. The ALJ noted that

5    Plaintiff had no problems with personal care and that she was able to manage her

6    medication regimen with the help of alarms she set. AR 26; *see* AR 269-270.

7        Finally, the ALJ noted that the limitations in these four categories were

8    consistent with the testimony of psychological expert Nancy Winfrey, Ph.D.,

9    whose opinion the ALJ assigned great weight. AR 30; *see* AR 46-48.

10        Because Plaintiff did not have an "extreme" limitation in any one category

11   or "marked" limitations in two categories, the ALJ concluded that Plaintiff did

12   not satisfy the Paragraph "B" criteria and therefore her depressive disorder did

13   not meet or equal Listing 12.04. *See* AR 26.

14        Later in the decision, the ALJ weighed the persuasive value of Dr. Islam-

15   Zwart's opinion as it related to Plaintiff's functional limitations. *See* AR 30. The

16   ALJ assigned it little weight, reasoning that Dr. Islam-Zwart expressed her

17   opinions regarding Plaintiff's work restrictions "on a checkbox form with little

18   explanation." AR 30. The ALJ also reasoned that the opinion was "internally

19   inconsistent," given that the mental status examination revealed mostly normal

20

1  findings but then Dr. Islam-Zwart paradoxically opined that Plaintiff had severe

2  work restrictions. AR 30.

3      Plaintiff argues that in analyzing Listing 12.04, "the ALJ relie[d] *exclusively*

4  on Dr. Kayleen Islam-Zwart's 'cursory' examination which he discredited." ECF

5  No. 14 at 10 (emphasis in original). She contends that "[t]he ALJ cannot have the

6  opinion both ways"—in other words, that the ALJ could not rely on Dr. Islam-

7  Zwart's opinion in analyzing Listing 12.04 at step three, but then subsequently

8  discount her opinion at step four. *Id.* However, the ALJ did not rely on Dr. Islam-

9  Zwart's *opinion* about Plaintiff's work restrictions in his analysis—he credited and

10  then relied on her clinical *findings*, which were generally normal (*e.g.*, score of

11  28/30 on the mental status exam). Plaintiff does not cite any authority establishing

12  that this was improper. But even if it was, the ALJ provided additional, separate

13  reasons supporting his determinations for each of the four criteria—*e.g.*, Plaintiff's

14  college degree, the fact that she liked to have people over and go to yard sales with

15  friends, her ability to balance a checkbook, etc. *See* AR 25-26.

16      Plaintiff also argues that the ALJ erred "by failing to discuss or analyze the

17  weekly mental health notes from [her] mental health counselor." ECF No. 14 at 10

18  (citing AR 1170-1266). However, the ALJ did—he discounted the counselor's

19  opinions because she gave them "in a conclusory fashion with no meaningful

20  explanation or analysis and no specificity." AR 31; *see*, *e.g.*, AR 1172 ("[Plaintiff]

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT** ~ 21

has a chronic mental health disability that is expected to last for an extended period

of time, beyond a period of 12 months. [Her] disability qualifies as defined in 42

U.S.C. 423."), 1176, 1183 ("Due to mental illness, [Plaintiff] has certain

limitations regarding anxiety, coping with stress, and physical transitions. In order

to alleviate those difficulties . . . I am prescribing an emotional support animal.").

The ALJ also reasoned that the counselor's treatment notes actually supported a

finding that Plaintiff was not disabled. AR 31.

Plaintiff also points to where her counselor indicated that she appeared

"anxious/avoidant," was overwhelmed, had "complex PTSD," could not sleep, was

exhausted, etc. ECF No. 14 at 10. However, she fails to explain how these noted

symptoms undermine the ALJ's determinations with respect to the four Paragraph

B criteria, such as her ability to understand, remember, or apply information. *See

id.* And in any event, this argument asks the Court to reweigh the evidence,

which the Court cannot do. *Matney*, 981 F.2d at 1019.

**C.    The ALJ Rationally Interpreted the Opinion of Medical Expert Lynne Jahnke, M.D.**

Plaintiff argues that Dr. Jahnke's testimony at the hearing "can be

interpreted as supporting a sedentary exertional limit." ECF No. 14 at 12. Plaintiff

contends that because the ALJ assigned great weight to Dr. Jahnke's opinion, the

ALJ was required to then find that she was limited to sedentary work. *Id.* Plaintiff

1    argues that because she lacked transferable skills, a sedentary work limitation

2    would have therefore precluded her from doing other work. *Id.*

3        Dr. Jahnke reviewed and outlined the medical record, identified Plaintiff's

4    severe and non-severe impairments, analyzed the listings, and provided an opinion

5    on workplace restrictions. AR 48-54. She testified that Plaintiff could perform light

6    work with some additional postural and environmental restrictions. AR 53-54.

7    Later, on cross-examination, counsel asked Dr. Jahnke if Plaintiff's central core

8    disease symptoms might support limiting her to sedentary work. AR 59. Dr. Jahnke

9    responded: "I didn't see evidence of it causing significant problems, but if her

10    primary care provider wrote an RFC that said sedentary I wouldn't disagree with

11    it." AR 59.

12        The ALJ ultimately characterized Dr. Jahnke's opinion as limiting Plaintiff

13    to light work. AR 29. The ALJ assigned great weight to her opinion and limited

14    Plaintiff to light work with some additional restrictions. AR 26, 30.

15        Plaintiff argues that Dr. Jahnke's comments on cross-examination "can be

16    interpreted as supporting a sedentary exertional limit." ECF No. 14 at 12. While

17    that is a possible interpretation, they can also be interpreted as opining that

18    Plaintiff could perform light work, that her central core disease did not "caus[e]

19    significant problems," but that *if* a treating provider limited her to sedentary work,

20    Dr. Jahnke would not disagree. And here, no treating provider indicated that

Plaintiff was limited to sedentary work. AR 29-31. Under these circumstances, the ALJ's interpretation of Dr. Jahnke's testimony was rational. And "when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings." *Molina*, 674 F.3d at 1111.

## VIII. Order

Having reviewed the briefs, the record, and the ALJ's findings, the Court concludes the Commissioner's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.    Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this September 4, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge